```
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone: 510/832-5001
Facsimile:   510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
KIANDRA BUSHEK
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIANDRA BUSHEK<br><br>    Plaintiff,<br><br><br>    v.<br><br><br><br>CALIFORNIA INVESTOR GROUP, LLC, dba EUROPEAN WAX CENTER-PLEASANTON<br><br><br>    Defendant. | CASE NO.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101** *et seq.***)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54** *et seq.***)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff KIANDRA BUSHEK complains of Defendant CALIFORNIA INVESTOR GROUP, LLC, dba EUROPEAN WAX CENTER-PLEASANTON, and alleges as follows:

1.    **INTRODUCTION:**  Defendant's owner and management in this case intentionally forbid Plaintiff's service dog from accompanying her into its body waxing center, over the objections of its employee who advised them they were violating the ADA as it was happening, along with Plaintiff. On May 27, 2023, Plaintiff KIANDRA BUSHEK purchased a 13-month pass for "Unlimited Brazilian" wax treatments at the European Wax Center located at 6770 Bernal Ave #430, Pleasanton, California.  At the time of she made the purchase, Plaintiff was accompanied by her medically necessary service dog Ben. No one mentioned that there

would be any issue with her receiving wax treatments while accompanied by her service dog when she purchased the pass.  However, when Plaintiff went to her waxing appointment on June 14, 2023, accompanied by her service dog, the assistant manager of the European Wax Center-Pleasanton told Plaintiff that she would not be allowed to bring "her dog" into the wax treatment room with her.  Plaintiff explained that Ben is a service dog and was allowed to accompany her anywhere the general public is allowed. The assistant manager started to argue with Plaintiff, but one of the wax estheticians stepped in and told the assistant manager that Plaintiff was correct, service dogs are allowed in the wax treatment rooms, over these objections.  Plaintiff was embarrassed at the unwanted attention from management but was grateful that the employee still would give her service.  The wax esthetician then took Plaintiff and Ben to the treatment room for her waxing.

  2. Plaintiff assumed that would be the end of the issues surrounding her service dog at European Wax Center-Pleasanton, but she was incorrect.  On July 5, 2023, Plaintiff and her service dog returned for another waxing appointment at European Wax Center-Pleasanton.  The assistant manager met her at the door, and she informed Plaintiff that she would not be allowed to take Ben back to the treatment room unless he was in a crate.  Plaintiff explained that Ben cannot perform the tasks he has been trained to do if he is trapped in a crate.  Defendant's manager reiterated that Plaintiff would not be allowed into the European Wax Center-Pleasanton with her service dog unless he was in a crate.  By this point, Plaintiff was very upset, so she decided it was best for her to leave.

  3. Plaintiff generally schedules a wax every three weeks.  Since she purchased a 13-month pass to European Wax Center, she would prefer to continue to use European Wax Centers for her waxing needs.  Since she has been constructively and intentionally barred from returning to the European Wax Center-Pleasanton, Plaintiff has had attend her waxing appointments at other European Wax Centers, with different franchise owners in the East Bay. However, none of the other European Wax locations are nearly as convenient for her as the Pleasanton location, and she trusts her regular wax esthetician at the Pleasanton location. She intends to return to patronize the European Wax Center-Pleasanton but cannot do so until the policies of the wax center are

made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary management employee training and/or re-training.  She has brought this lawsuit to require Defendant to change its discriminatory and illegal policies and compensate her for refusing to allow her to enter and use the services of the European Wax Center-Pleasanton because she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the European Wax Center-Pleasanton.

4. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

5. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

6. **INTRADISTRICT:** This case should be assigned to the Oakland intradistrict because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

7. **PARTIES:** Plaintiff Kiandra Bushek is a "qualified" disabled person.  She is a armed forces veteran who suffers from post-traumatic stress disorder (PTSD) resulting from her military service.  Plaintiff relies upon her service dog, a Cavalier King Charles named "Ben," to assist her with certain tasks including nudging Plaintiff to disrupt repetitive behavior and providing deep pressure therapy to ground and calm Plaintiff.  Ben was personally trained by Plaintiff with information from Paws for Purple Hearts and Canine Companions to be a service dog.  Additionally, Plaintiff continues to reinforce the training with Ben daily.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

8. Defendant CALIFORNIA INVESTOR GROUP, LLC, dba EUROPEAN WAX CENTER-PLEASANTON, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business, property and building located at 6770 Bernal Ave

1  #430, Pleasanton, California known as the European Wax Center-Pleasanton.

2  9. European Wax Center-Pleasanton is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

10. **FACTUAL STATEMENT:** Plaintiff Kiandra Bushek has been working with her service dog Ben for several months. Ben is a Cavalier King Charles who was personally trained by Plaintiff. Plaintiff has trained and continues to train Ben to serve her specific needs throughout their relationship. Ben is specifically trained to assist Plaintiff with controlling her symptoms of PTSD by getting her attention at the onset of symptoms, disrupting repetitive behaviors, and to provide deep pressure therapy to ground Plaintiff.

11. Ben is a working dog; he is not a pet. Plaintiff and Ben have trained extensively together, and they supplement that training daily. Plaintiff takes Ben everywhere she can with her in public. It is important they stay together at all times because (a) Ben provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. Where Plaintiff goes, Ben goes. Below are photographs of Ben as he looked at the time of the incidents when he and Plaintiff were denied access at European Wax Center-Pleasanton:





12. Plaintiff has been getting wax treatments at the European Wax Center-Pleasanton since August of 2022. She has a regular esthetician who she likes and feels comfortable with at this European Wax location, so Plaintiff continued to return there for wax treatments on a regular basis. In April of 2023, Plaintiff began working with her service dog Ben. On April 19, 2023, Plaintiff had an appointment at European Wax Center-Pleasanton to receive a wax treatment. Prior to attending the appointment, Plaintiff spoke with her wax esthetician at the European Wax Center-Pleasanton to let her know that she would be bringing her service dog to the appointment. Defendant's employee said that should not be an issue as long as Ben was well-behaved. Plaintiff attended her wax appointments with Ben on April 19th, May 10th, and May 27th. He was very well behaved, and there were no issues with Defendant's employees.

13. On May 27, 2023, relying on Defendant's representations and conduct that they allowed service dogs, and specially allowed her service dog, Plaintiff purchased a 13-month pass for "Unlimited Brazilian" wax treatments at the European Wax Center located at 6770 Bernal Ave #430, Pleasanton, California. Plaintiff generally gets a wax treatment every three weeks, so despite the expense, it was worth it to her to buy the pass. When she bought the thirteen-month pass at the European Wax Center-Pleasanton, Plaintiff was accompanied by her service dog, Ben.

None of Defendant's employees mentioned anything about Plaintiff's service dog or that she would not be allowed treatment if she was accompanied by Ben at the time of her purchase. In fact, she had an appointment that day, and Ben was allowed to accompany her throughout the appointment.

14.  On June 14, 2023, Plaintiff returned to European Wax Center-Pleasanton for a wax treatment.  As is her practice, she was accompanied by Ben. As Plaintiff was checking in for her appointment, an employee, who appeared to be an assistant manager, that Plaintiff had never interacted with previously, informed her that she could not bring her dog in the back to receive her treatment.  Plaintiff calmly explained that Ben is her service dog and therefore can accompany her anywhere that the general public is allowed. Defendant's employee reiterated that Plaintiff would not be allowed to come into the waxing area with Ben. Plaintiff reiterated that Ben is a service dog, and she attempted to pull up a letter from her VA mental health provider prescribing her a service dog on her phone.  However, at this point, her usual esthetician interrupted Plaintiff's conversation with Defendant's new employee and explained to the manager that by law Plaintiff does not have to show anything to prove that Ben is a service dog.  Plaintiff's esthetician then led her to the waxing area. Plaintiff was able to attend her appointment with Ben, but the incident left Plaintiff rattled.

15.  On information and belief Defendant's new employee was named Meisha, and she is assistant manager of the European Wax Center-Pleasanton.

16.  When Plaintiff returned to her car after the appointment, her teenage son, who had waited in her car during the appointment, pointed out to Plaintiff one of Defendant's employees who was outside of the store talking loudly about Plaintiff on the phone with someone in a very loud and unkind manner.  Plaintiff and her son were both upset, so Plaintiff texted the business before she left to request a call so that she could discuss the incident with the owner.  Plaintiff wanted assurance that the new assistant manager would be trained in the laws surrounding service dogs to ensure a more pleasant experience for her future appointments. She received a text back stating, "I've sent a note to the front desk to follow-up." She did not hear anything else back, so Plaintiff sent a follow-up text on June 16, 2023, requesting a call from the owner.  She received

1   the same responsive text message again.  Plaintiff never had any substantive conversations with
2   the owner or anyone else at the European Wax Center-Pleasanton about their service dog policy.

3       17.     On July 5, 2023, Plaintiff had another appointment for a wax treatment at the
4   European Wax Center-Pleasanton.  She arrived for her appointment with Ben, and she was
5   immediately approached by Defendant's assistant manager who was holding a Post-It note where
6   she had written the questions that she is legally allowed to ask a service dog owner.  She asked
7   Plaintiff 1) Are you disabled? and 2) Is your dog trained to perform tasks related to your
8   disability? Plaintiff answered both questions affirmatively. Then Defendant's assistant manager
9   asked Plaintiff what tasks Ben is trained to perform. Plaintiff informed Defendant's assistant
10  manager that trained to perform tasks such as layover/lay on and nudge.  Defendant's assistant
11  manager said, "fine that's a service dog," but she also told Plaintiff that Ben would not be allowed
12  to come into the treatment room unless he is confined to a crate or pet carrier.

13      18.     Plaintiff's esthetician told the assistant manager that requiring a service dog to be
14  confined to a crate is against the law. Plaintiff also explained that Ben is not able to perform his
15  tasks while in the crate. Defendant's assistant manager reiterated that Ben cannot come back to
16  the treatment room unless he is in a crate due to "hygiene and cosmetology regulations." Plaintiff
17  tried to explain that regardless of general cosmetology regulations service dogs are allowed to
18  accompany their owners anywhere the general public is allowed at public accommodations.
19  Plaintiff explained that Ben goes to the nail salon and  hair salon with her without any issue. She
20  also offered to show the assistant manager her letter from her VA mental health provider
21  prescribing her a service dog. Defendant's assistant manager absolutely refused to let her in the
22  into the treatment room at the waxing center without Ben being in a crate.  Defendant's assistant
23  manager told Plaintiff that this policy had come directly from the owner.  Plaintiff left the
24  European Wax Center-Pleasanton.

25      19.     Plaintiff returned to her car.  She was very upset, and Ben performed the tasks he
26  has been trained to perform to calm her down and focus her.  Once Plaintiff has calmed down, she
27  called a different European Wax Center in San Ramon to ask about their service dog policy.  The
28  employee she spoke to there explained that service dogs were welcome at their location.  She also

1  explained that European Wax Centers are franchised so the San Ramon location had a different
2  owner than the Pleasanton location.  Each European Wax Center apparently has the ability to set
3  their own policies and train their employees as they see fit.

4      20.    Since the July 5, 2023, incident at the European Wax Center-Pleasanton, Plaintiff
5  has been going to her waxing appointments at the San Ramon European Wax Center. She has had
6  appointments there on July 6 and 27, 2023, August 16, 2023, and September 6, 2023.  As of the
7  filing of the complaint, she has appointments scheduled for September 27, 2023, October 18,
8  2023, and November 8, 2023, at the San Ramon location.  However, the San Ramon location is
9  not convenient for Plaintiff. It is father away and in the opposite direction from her other daily
10 routines. She would much prefer to return the European Wax Center-Pleasanton so that she can
11 receive her wax treatments from her regular esthetician, who she is very comfortable with and
12 prefers.

13     21.    Plaintiff wishes to return to European Wax Center-Pleasanton, but only *after*
14 Defendant's have implemented proper service animal policies and training of its staff.  Plaintiff is
15 deterred from returning to the Wax Center until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

18     22.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein,
19 the factual allegations contained in Paragraphs 1 through 21, above, and incorporates them herein
20 by reference as if separately repled hereafter.

21     23.    In 1990 Congress passed the Americans with Disabilities Act after finding that
22 laws were needed to more fully protect "some 43 million Americans with one or more physical or
23 mental disabilities; that historically society has tended to isolate and segregate individuals with
24 disabilities;" that "such forms of discrimination against individuals with disabilities continue to
25 be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals
26 with disabilities are to assure equality of opportunity, full participation, independent living and
27 economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and
28 unnecessary discrimination and prejudice denies people with disabilities the opportunity to

1  compete on an equal basis and to pursue those opportunities for which our free society is
2  justifiably famous." 42 U.S.C. § 12101(a).

3      24.    The ADA provides, "No individual shall be discriminated against on the basis of
4  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,
5  or accommodations of any place of public accommodation by any person who owns, leases, or
6  leases to, or operates a place of public accommodation." 42 USC § 12182.

7      25.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation
8  Act and in the Americans with Disabilities Act of 1990.

9      26.    European Wax Center-Pleasanton is a public accommodation within the meaning
10 of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

11     27.    The ADA prohibits, among other types of discrimination, "failure to make
12 reasonable modifications in policies, practices or procedures when such modifications are
13 necessary to afford such goods, services, facilities, privileges, advantages or accommodations to
14 individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

15     28.    Under the "2010 Revised ADA Requirements: Service Animals," as published by
16 the United States Department of Justice, and distributed by the DOJ's Civil Rights Division,
17 Disability Rights Section, "Generally, title II and title III entities must permit service animals to
18 accompany people with disabilities in all areas where members of the public are allowed to go."
19 ADA Requirements: Service Animals, https://www.ada.gov/resources/service-animals-2010-
20 requirements. Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

24 *Ibid.*, emphasis in original.

25     29.    Defendant has a policy and practice of denying access to patrons with service
26 animals.

27     30.    On information and belief, as of the date of Plaintiff's most recent visit to
28 European Wax Center-Pleasanton on or about July 5, 2023, Defendant continues to deny full and

equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

31. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

32. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "beauty shop…or other service establishment." 42 USC § 12181(7)(F).

33. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation

that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

34. The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

35. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

1   accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

2       36.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing European Wax Center-Pleasanton and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

    37.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

    38.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize European Wax Center-Pleasanton, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

//

//

//

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

39. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 38 of this Complaint and incorporates them herein as if separately re-pleaded.

40. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

41. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

42. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

43. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

44. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of

1  Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of
2  Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble
3  damages to Plaintiff, according to proof.

4        45.    **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct,
5  Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by
6  statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for
7  disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore
8  seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the
9  provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is
10 intended to require that Defendant make its facilities and policies accessible to all disabled
11 members of the public, justifying "public interest" attorney fees, litigation expenses and costs
12 pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other
13 applicable law.

14       46.    Plaintiff suffered damages as above-described as a result of Defendant's
15 violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

20       47.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the
21 factual allegations contained in Paragraphs 1 through 46 of this Complaint and all paragraphs of
22 the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

23       48.    Under the California Disabled Persons Act (CDPA), people with disabilities are
24 entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public
25 places."  Civil Code § 54(a).

26       49.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal
27 access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging
28 places of accommodation, amusement or resort, or other places to which the general public is

invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

50. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

51. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

52. Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

53. The European Wax Center-Pleasanton is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

54. Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this large public accommodation and place of business based upon Defendant's illegal prohibition of her legally protected use of her

service dog.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to return to the European Wax Center-Pleasanton until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since June 14, 2023, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

55.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

56.     Plaintiff wishes to return to patronize European Wax Center-Pleasanton but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize European Wax Center-Pleasanton and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

57.     The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

58. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

59. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated. Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize European Wax Center-Pleasanton and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

60. At all times herein mentioned, Defendant knew, or in the exercise of reasonable diligence should have known, that its practices at the subject facilities violated disabled access requirements and standards, and would have a discriminatory effect upon Plaintiff and upon other disabled persons who work with service dogs, but Defendant has failed to rectify the violations, and presently continue a course of conduct of maintaining policy barriers that discriminate against Plaintiff and similarly situated disabled persons. For the foregoing reasons, Plaintiff alleges that an award of statutory treble damages is appropriate.

61. Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of their duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

62. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

63. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on her deterrence from returning to European Wax Center-Pleasanton.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under

the laws of the United States and the State of California.

WHEREFORE, Plaintiff Kiandra Bushek prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of European Wax Center-Pleasanton;

    c. That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

  4. An award of prejudgment interest pursuant to Civil Code § 3291;

  5. Interest on monetary awards as permitted by law; and

  6. Grant such other and further relief as this Court may deem just and proper.

Date: September 26, 2023      REIN & CLEFTON

               */s/ Aaron M. Clefton*
              By AARON M. CLEFTON, Esq.
              Attorneys for Plaintiff
              KIANDRA BUSHEK

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: September 26, 2023      REIN & CLEFTON

               */s/ Aaron M. Clefton*
              By AARON M. CLEFTON, Esq.
              Attorneys for Plaintiff
              KIANDRA BUSHEK